UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RIYNELL JACKSON**                         **CIVIL ACTION**

**VERSUS**                                  **NO: 09-5920**

**ROBERT TANNER, WARDEN**                   **SECTION: "N"(5)**

## REPORT AND RECOMMENDATION

This matter was referred to the United States Magistrate Judge for the purpose of conducting hearings, including an evidentiary hearing, if necessary, and submission of proposed findings and recommendations for disposition pursuant to 28 U.S.C. §636(b)(1)(B) and (C), and as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, the court has determined that this matter can be disposed of without an evidentiary hearing. For the reasons set forth below, it is recommended that the instant petition be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL HISTORY

Petitioner, Riynell Jackson, is a state prisoner who is currently incarcerated in the Rayburn Correctional Center, Angie, Louisiana. On August 6, 2003, Jackson was charged in a bill of information in the Criminal District Court for the Parish of Orleans with one count of possession with the intent to distribute

heroin in violation of La.R.S. 40:966. At his arraignment on August 19, 2003, Jackson pled not guilty. On November 10, 2004, Jackson's first trial ended in a mistrial on the motion of Jackson's counsel as a result of testimony by an investigating police officer who referenced statements attributable to the Jackson that were not disclosed pretrial as required. On February 15, 2005, Jackson's counsel filed a motion to quash the charges based upon prosecutorial misconduct which subjected Jackson to double jeopardy. On February 17, 2005, the trial court denied that motion. On March 28, 2005, the trial court denied Jackson's *pro se* motion to quash, but ruled that the statements that were the subject of the motion for a mistrial were inadmissible at a subsequent trial.

On March 31, 2005, at the conclusion of a two-day trial, a twelve-person jury found Jackson guilty as charged. On April 4, 2005, Jackson filed motions to quash the multiple bill filed by the State and for appeal. On April 12, 2005, the trial court sentenced Jackson to serve twenty years at hard labor without benefit of parole, probation, or suspension of sentence. The trial court dismissed the State's multiple bill, and granted the State's appeal and Jackson's appeal.

In connection with his appeal, Jackson raised the following claims: 1) the State intentionally provoked a mistrial; 2) the State presented perjured testimony; and, 3) defense counsel was

2

ineffective in failing to object to the perjured testimony at trial and at a December 2004 suppression hearing, and in failing to advise him that he had to consent to the mistrial motion before it was granted. On November 29, 2006, the Louisiana Fourth Circuit Court of Appeal rejected the above claims and affirmed Jackson's conviction. However, the appellate court amended Jackson's sentence to delete the prohibition on parole eligibility and reversed the trial court's dismissal of the State's multiple bill, remanding the matter for further proceedings on the multiple bill. State v. Jackson, 947 So.2d 115 (La. App. 4th Cir. 2006). On September 14, 2007, Jackson's writ application was denied by the Louisiana Supreme Court. State v. Jackson, 963 So.2d 996 (La. 2007).

On June 19, 2008, the state district court adjudicated Jackson to be a third-felony offender, vacated his original sentence, and resentenced him to serve thirty-three years and four months at hard labor. On January 14, 2009, the Louisiana Fourth Circuit Court of Appeal, pursuant to Jackson's appeal, determined that the State only proved that Jackson was a second-felony offender. Accordingly, the state appellate court vacated the district court's adjudication and sentencing of Jackson as a third-felony offender, adjudicated Jackson to be a second-felony offender, and remanded the matter to the district court for resentencing. The Louisiana Fourth Circuit also rejected Jackson's claims that counsel was

3

ineffective in failing to adequately prepare for the multiple bill hearing and failing to object to the voluntariness of prior guilty pleas. State v. Jackson, 4 So.3d 131 (La. App. 4th Cir. 2009). In accordance with the appellate court's remand, the district court, on March 10, 2009, sentenced Jackson as a second-felony offender to thirty years at hard labor with credit for time served.

On March 27, 2008, Jackson filed an application for post-conviction relief with the state district court, raising the following claims: 1) The State "goaded" the defense into moving for a mistrial; 2) The State intentionally introduced into evidence perjured testimony; and, 3) He was denied due process by virtue of the fact that a mistrial was granted in his first trial without his consent.[1] The state district court denied Jackson's post conviction relief application and, on September 11, 2009, the Louisiana Fourth Circuit, finding "no error in the district court's judgment", likewise denied relief, providing: "All of the claims raised in the application were fully litigated on appeal and denied. See, State v. Jackson, 05-1281 (La. App. 4 Cir. 11/29/06), 947 So.2d 115, writ denied, 07-0024 (La. 9/14/07), 963 So.2d 996." State v. Jackson, No. 2009-K-1192 (La. App. 4th Cir. Sept. 11, 2009)

---

[1] A copy of Jackson's post-conviction application is contained in the State rec., vol. 2 of 11.

(unpublished decision).² There is no evidence in the pertinent record that Jackson sought relief from the Louisiana Supreme Court in connection with the Louisiana Fourth Circuit's September 11, 2009 adverse decision and a Westlaw search revealed that no decision has been issued by the state high court in connection with the state appellate court's decision in State v. Jackson, No. 2009-K-1192 (La. App. 4th Cir. Sept. 11, 2009).

Jackson filed the instant federal habeas corpus action (rec doc. 1) on August 10, 2009, raising the following claims: 1) the State "goaded" the defense into moving for a mistrial; 2) the State intentionally introduced perjured testimony; and, 3)he was denied due process and subjected to double jeopardy by virtue of the fact that a mistrial was declared in his first trial without his consent. In its response (rec. doc. 13), the State does not contest the timeliness of the instant action and does not allege that Jackson has failed to exhaust his state court remedies as required under Rose v. Lundy, 455 U.S. 509, 102 S.Ct. 1198 (1982).

## II. FACTS³

On the morning of July 16, 2003, Officers Jason Giroir and Gus

---

²A copy of the state appellate court's unpublished decision is contained in the State rec., vol. 11 of 11.

³The facts hereinafter related are as found by the state appellate court in Jackson's direct appeal. See State v. Jackson, 947 So.2d at 118.

5

James of the New Orleans Police Department ("NOPD") were on proactive patrol in the area around Tulane Avenue. While on patrol, the officers observed a car traveling down Tulane Avenue that had an expired brake tag. Based on the traffic violation (the expired brake tag), the officers conducted a traffic stop. The three occupants in the car were Tamika January, the driver; Mr. Jackson, the front seat passenger; and Ms. January's three-year old child, the rear seat passenger. The officers approached the car and ordered the front-seat passengers out of the car. Complying with the officers request, Ms. January and Mr. Jackson exited and walked to the back of the car. The officers allowed Ms. January's toddler to remain inside the car. Although the officers requested that Ms. January produce her driver's license, car registration, and proof of insurance, she was only able to produce a current identification card.

Officer Giroir returned to the police car to run Ms. January's and Mr. Jackson's names through the computer. He learned that Ms. January's driver's license was suspended. Meanwhile, Officer James walked over to the passenger door of the car, which Mr. Jackson had left open. Inside the car Officer James spotted a clear plastic bag containing rice and eleven tinfoil packets. The bag was lying on the front passenger seat next to the center console. Believing the tinfoil packets in the bag contained drugs, Officer James seized the bag. He then indicated to Officer Giroir, who had just

exited the police car, that he had found drugs. The officers handcuffed Mr. Jackson and Ms. January and advised them that they were under investigation.

While Officer Giroir was advising Mr. Jackson and Ms. January of their Miranda rights, Mr. Jackson spontaneously stated: "The dope is mine. I don't use it. I just sell it." The officers then arrested Mr. Jackson and searched him, but found no drugs on his person. A canine search was conducted, but no further drugs were found.

After the officers finished advising him of his rights, Mr. Jackson signed a waiver of rights of arrestee form. On the bottom of the form, Mr. Jackson handwrote the following: "Yes. It's my drugs."

At trial, the parties stipulated that the substance found in the tinfoil packets tested positive for heroin and weighed 13.1 grams.

## III. **STANDARD OF REVIEW**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") comprehensively overhauled federal habeas corpus legislation, including 28 U.S.C. §2254. Amended subsections 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law, and mixed questions of law and fact. Provided that the state court adjudicated the claim on the merits, pure questions of law and mixed questions of law and fact

are reviewed under §2254(d)(1) and questions of fact are reviewed under §2254(d)(2). Hill v. Johnson, 210 F.3d 481, 485 (5th Cir. 2000).

As to questions of law and mixed questions of law and fact, a federal court must defer to the state court's decision unless it "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. §2254(d)(1). The United States Supreme Court has noted:

> §2254(d)(1)'s "contrary to" and "unreasonable application" clauses have independent meaning. A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts. The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case. The focus of the latter inquiry is on whether the state court's application of clearly established federal law is objectively unreasonable, and we stressed in Williams[ v. Taylor, 529 U.S. 362 (2000)] that an unreasonable application is different from an incorrect one.

Bell v. Cone, 535 U.S. 685 (2002) (citations omitted).

As to questions of fact, factual findings are presumed to be correct and a federal court will give deference to the state court's decision unless it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. §2254(d)(2); see also Hill,

210 F.3d at 485; 28 U.S.C. §2254(e)(1).

## IV. ANALYSIS

### A. Defense "Goaded" Into Moving For A Mistrial

Jackson argues that the prosecution elicited from Officer Giroir testimony regarding alleged inculpatory statements made by Jackson for the purpose of forcing the defense to seek a mistrial. Jackson contends that the State sought a mistrial because at least two of the members of the jury did not hold police officers in high regard and the State feared they would be unable to attain a conviction against Jackson with the jury empaneled in connection with Jackson's first trial.

Jackson raised this same claim of prosecutorial misconduct in connection with his direct appeal. In addressing said claim, the Louisiana Fourth Circuit, in order to "place this issue in context", first reviewed the circumstances which led to a mistrial in connection with Jackson's first trial.

> At the first trial, Officer Giroir, one of the arresting officers, was the State's first witness. On direct examination, the Assistant District Attorney ("ADA") asked Officer Giroir whether Mr. Jackson at any point made any statements to him besides the statement that he made while his Miranda rights were being read to him ("The dope is mine. I don't use it. I just sell it.") and the statement he noted on the waiver of rights of arrestee form that he signed ("Yes. It's my drugs.") In response, Officer Giroir testified:
>
>> Mr. Jackson, the whole time we were on the scene, the whole time en route to the station, and while we were at the station, I remember

him mumbling, talking to himself, saying that "life is hard. We don't understand. This is something he has to do for money, because life is hard, and the streets of New Orleans are tough. And that's the only way to make ends meet."

The State did not give any pretrial notice that Mr. Jackson made the later statements, nor was there any reference in the police report to the later statements. At the 2003 suppression hearing, Officer Giroir did not testify; rather, only Officer James testified. The only statement to which Officer James referred at that hearing was Mr. Jackson's initial statement that the drugs were his and that he sold, but did not use, drugs. It was not until Officer Giroir's testimony at the first trial-conducted by a different ADA than the one who covered the 2003 suppression hearing-that the defense became aware of the later statements. In response, defense counsel moved for a mistrial, which the trial court granted.

After the first trial, the trial court held suppression hearings regarding Officer Giroir's testimony that Mr. Jackson made the later statements. Although Officer Giroir maintained that he heard Mr. Jackson make the later statements, Officer James at a separate hearing denied hearing Mr. Jackson make any such statements. The court initially refused to suppress the later statements.

Defense counsel then filed a motion to quash the bill of information. Counsel argued that the ADA intentionally asked Officer Giroir about the later statements (for which the State provided no prior notice) in order to provoke a mistrial. Denying the motion, the trial court reasoned that the State reaped no benefit by introducing Mr. Jackson's later statements. The court reasoned that the later statements were similar to the initial statement Mr. Jackson made while his Miranda rights were being read to him.

Thereafter, Mr. Jackson filed a similar *pro se* motion to quash the indictment. Mr. Jackson contended that the State sought to provoke the mistrial because the jury empaneled at the first trial was unfavorable to the State. In addressing the motion, Mr. Jackson requested that the court review the voir dire transcript from the first trial. The court denied both the request to review the transcript and the motion to quash, stating:

> I just don't see any connection between jury selection in this case and the subsequent

10

> questions by the DA and eventual move for mistrial.... I don't see any connection in the sense of it being such that by it, or by the voir dire and the jury selection, that the State again goaded your counsel into moving for a mistrial.
>
> Although the trial court denied Mr. Jackson's motion, it ruled that the State could not use the later statements at Mr. Jackson's subsequent trial. In so ruling, the court reasoned:
>> I gave the State an opportunity to reopen the motion hearings; and, of course, the Court denied the motion to suppress those statements. I think that ruling was wrong; wrong because the State would have had an opportunity on the front end to present those statements and didn't. And then the case proceeded to trial and was mistried because the State tried to elicit those statements at trial. That resulted in a mistrial. But then to give the State subsequently the opportunity to present those same statements in a motion to suppress the statements, and then to allow the State to use those statements in a subsequent trial, this Court believes is wrong."
>
> The State did not object to this ruling.

Jackson, 947 So.2d at 119-121.

The state appellate court then reviewed applicable Supreme Court law.

> In Oregon v. Kennedy, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), which defense counsel cites, the Supreme Court explained that the reviewing court must look to the intent of the prosecutor in his actions to determine whether the prosecutor's actions in causing a mistrial rise to the level of prosecutorial misconduct that bars a retrial. The importance of the prosecutor's intent, the Court explained, is that "[o]nly where the governmental conduct in question is intended to 'goad' the defendant into moving for a mistrial may a defendant raise the bar of double jeopardy to a second trial after

11

> having succeeded in aborting the first on his own motion." *Oregon,* 456 U.S. at 676, 102 S.Ct. at 2089. The Court also instructed that the reviewing court must give deference to the trial court's findings as to whether the prosecutor's actions were intended to goad the defendant into requesting a mistrial. *Oregon,* 456 U.S. at 679, 102 S.Ct. at 2091.

Jackson, 947 So.2d at 121.

Thereafter, the Fourth Circuit reiterated Jackson's claim and examined the pertinent facts.

> [Jackson] contends that the ADA asked Officer Giroir about the later statements in order to provoke a mistrial because the jury was pro-defense. Stated otherwise, he contends that the State provoked the mistrial because it did not like the jury that had been seated. Counsel acknowledges that a trial court's decision on whether the State acted intentionally in goading the defendant into moving for a mistrial is ordinarily a question of fact that is entitled to deference on appeal. Counsel, however, contends that the trial court's finding in this case is not entitled to deference because the court failed to review the voir dire transcript before ruling on the motion. A review of the transcript, he contends, would have shown that the jury ultimately chosen for that trial contained at least two jurors who were adverse to the State.
> 
> Counsel extensively chronicles the questioning at voir dire that elicited responses by several prospective jurors regarding the following concerns:
> 
> ● the inability to convict without testimony from an independent witness,
> ● the inability to convict for possession with the intent to distribute without evidence of an actual distribution,
> ● the perception that police officers lie,
> ● the issue of whether drugs should be legalized, and
> ● the prospective jurors' relationships with family and friends who had been involved with drugs.
> 
> A review of the voir dire transcript indicates that although many prospective jurors voiced the above concerns, almost all of those who did so were excused,

either by the defense or by the State, or by challenges for cause.  Indeed, the trial court excused many jurors for cause on the State's motion.  Only three of the jurors that defense counsel mentions by name in his brief to this court were ultimately sworn as jurors-Paula Davis, Catherine Delaune, and Huong Pham.

First, Ms. Pham indicated that she had a friend who had been charged with distribution of drugs.  The State sought to have her removed for cause, but the trial court refused the challenge.  Defense counsel argues that Ms. Pham remained on the jury because the State had already exhausted its peremptory challenges by the time the court reached her.  Although it is unclear if the State had exhausted its challenges by that time, the voir dire transcript indicates that when first asked by the State if the fact that her friend had been charged would affect her ability to be fair, she replied that it would not. When the State sought to excuse Ms. Pham for cause, the court held an in-chambers hearing in which it asked her if the fact that her friend had been charged with distribution of drugs would affect her ability to be fair.  She replied:  "I don't think so."  The following colloquy then took place:

**BY THE COURT:**

> If, in fact, you have to listen to the testimony of witnesses, you believe the State of Louisiana proved beyond a reasonable doubt that Mr. Jackson possessed with the intent to distribute heroin, could you find him guilty of it?

**BY JUROR PHAM:**

> It would depend on how the case is going and the witness.

**BY THE COURT:**

>> If, in fact, you thought that was such and he, in fact, was guilty, would you find him guilty?

**BY JUROR PHAM:**

>> Yes. If the witness I see in my judgment, if I see that.

**BY THE COURT:**
On the opposite side of that, if you believe,

13

>    in fact, that he wasn't guilty of the crime,
>    would you have a problem finding him not
>    guilty?

**BY JUROR PHAM:**

>    If there's not proof or no evidence, no.

**BY THE COURT:**

>    Would you be able to find him not guilty?

**BY JUROR PHAM:**

>    Yes.  If there's no proof, I wouldn't.  If
>    there's no proof that I can find him guilty,
>    no, I wouldn't prove [sic] that he's guilty.
>    No.

The court then refused the challenge for cause.  Thus, although Ms. Pham knew someone who had been charged with distribution of drugs, she expressly indicated that this relationship would have no affect on her ability to convict Mr. Jackson if the State proved his guilt.

The second, and only other, juror who was included on the jury that defense counsel addresses in its argument is Ms. Delaune.  During voir dire, Ms. Delaune indicated that she would have needed to see the crime herself to convict and that she was partial.  She also indicated that the State would have to prove its case beyond a reasonable doubt.  At the conclusion of the first round of jury selection, the State for some reason challenged for cause another juror who had a similar first name to Ms. Delaune, but who did not give any answers showing a bias against the State, Kathleen Eziene.  The State's reason for challenging Ms. Eziene was her statement that "seeing is believing."  This statement, however, was made by Ms. Delaune. Nonetheless, the court granted the State's challenge of Ms. Eziene.  The State did not challenge Ms. Delaune, and she was selected as a juror.

Defense counsel theorizes that the State did not notice the mix-up until the following day after jury selection had been completed.  At that point, counsel speculates, the State realized that it had a hostile jury.  For that reason, counsel further speculates, the prosecutor intentionally asked Officer Giroir about Mr. Jackson's later statements in order to provoke a mistrial.  This theory, however, is based solely on speculation.  The State would have known at the end of the first round of jury selection it excused the wrong

juror-if indeed it did so-when Ms. Eziene exited and Ms. Delaune remained as a juror. At that point, the State still had peremptory challenges that it could have exercised if it mistakenly excused the wrong juror.[4] Thus, it is only counsel's speculation that the State did not realize its mistake until the second day of trial when it caused the mistrial. Defense Counsel also speculates that "it would not be surprising" that the jurors who were actually seated would have been influenced by the pro-defense statements made by the prospective jurors who were excused, either for cause or by the State. Again, this is solely speculation on counsel's part.

    Although the trial court did not review the voir dire transcript . . . the trial judge was present during voir dire; he, therefore, possessed personal knowledge of those proceedings.

Jackson, 947 So.2d at 121-123.

The Fourth Circuit concluded that in order to grant Jackson relief, it "must find that the State's action in questioning Officer Giroir about Mr. Jackson's later statements was a bad faith attempt to stop the trial." Jackson, 947 So.2d at 123. The court declined to make such a finding, reasoning:

    The ADA who covered the 2003 suppression hearing, at which only Officer James testified, was not the same ADA who presided over the trial and who questioned Officer Giroir about Mr. Jackson's later statements. Rather than showing that the question was an intentional act to provoke a mistrial, the act could just as likely have been the product of an ADA who was not properly prepared for trial and who was unaware that the later statements had not been brought out before trial. Given these

---

[4]Ms. Delaune was seated during the first round of voir dire. The jury sheets indicate the State used peremptory challenges in the second round; thus, it could have used one to excuse Ms. Delaune before the second round of jury selection.

15

circumstances, we cannot say that the trial court erred in finding the defense failed to prove the ADA asked the question in bad faith in order to provoke a mistrial. Absent a showing of bad faith, the Due Process Clause was not violated. We thus find this claim unpersuasive.

Jackson, 947 So.2d at 124.

This court finds that the above-conclusion on the part of the Louisiana Fourth Circuit Court of Appeals does not represent an unreasonable application of the applicable law enunciated by the Supreme Court in Oregon v. Kennedy, supra, to the facts of this case. Accordingly, the instant claim for federal habeas corpus relief is without merit.

**B. State Intentionally Introduced Perjured Testimony**

Jackson contends that he is entitled to federal habeas corpus relief because the State knowingly allowed a witness, specifically, Officer Giroir, to offer perjured testimony, specifically, his testimony in the first trial that Jackson later, following his arrest, made inculpatory statements. However, as the Louisiana Fourth Circuit noted in rejecting the instant claim on direct appeal, Jackson was not prejudiced by Officer Giroir's testimony because a mistrial was declared in the first trial in which the allegedly perjured testimony was offered and said testimony was not allowed in Jackson's second trial.

The presentation of Officer Giroir's testimony

regarding the later statements did not prejudice Mr. Jackson. Before the subsequent trial, the court suppressed the later statements. No evidence of the later statements was presented at Mr. Jackson's second trial. His conviction was not a product of any prosecutorial misconduct or perjured testimony.

Jackson, 947 So.2d at 124.

Given the fact that Jackson suffered no prejudice as a result of the State's alleged knowing use of perjured testimony, the court finds the instant claim to be without merit.[5]

### C. Mistrial Declared Without Jackson's Consent

---

[5]The State, in its response (rec. doc. 13, p. 14), asserts that Jackson raised his claim that the State intentionally introduced into evidence perjured testimony "for the first time in his application for post conviction relief in the trial court." The State further argues that because the instant claim was denied "on the procedural grounds that it was impermissibly repetitive on post-conviction under La. C.Cr.P. art. 930.4(A)", this court "lack[s] jurisdiction to review the merits . . . . Coleman v. Thompson, 501 U.S. 722, 729, 111 S.Ct. 2546, 2553; 115 L.Ed.2d 640 (1991); Moore v. Roberts, 83 F.3d 699, reh. denied, 95 F.3d 56 (5th Cir. 1996)."

The State's assertion that Jackson first raised his claim regarding the State's alleged use of perjured testimony on post-conviction is belied by a review of the Louisiana Fourth Circuit's opinion on direct review wherein the issue was squarely addressed. The veracity of the State's assertion is likewise questionable given the fact that the claim was denied on post-conviction as repetitive. Further, the State's procedural bar argument is without merit because Article 930.4(A) "is not a procedural bar in the traditional sense" and therefore, does not bar federal habeas corpus review. Bennett v. Whitley, 41 F.3d 1581, 1583 (5th Cir. 1994); see also Bell v. Cain, 2002 WL 31002831, *9 n.37 (E.D. La. 2002) ("A claim denied pursuant to La.C.Cr.P. art. 930.4(A) is not procedurally barred in a federal habeas corpus proceeding.").

17

Jackson argues that he is entitled to federal habeas corpus relief because a mistrial was granted in connection with his first trial without his consent and, therefore, his retrial, resulting in his conviction, was unlawful. In support of this claim, Jackson cites the same state law which he cited to support the instant claim when he raised it on direct appeal. As the Louisiana Fourth Circuit observed:

> [Jackson] cites La.C.Cr.P. art. 775, which provides in pertinent part that "[a] mistrial may be ordered, and in a jury case the jury dismissed, when: (1) The defendant consents thereto." He also cites the official comment to Article 775, which refers the reader to the provisions of La.C.Cr.P. art. 591, which provides in pertinent part: "No person shall be twice put in jeopardy of life or liberty for the same offense, except ... where there has been a mistrial legally ordered under the provisions of Article 775 or ordered with the express consent of the defendant." Moreover, he cites State v. DeGrate, 25,732 (La.App. 2 Cir. 3/30/94), 634 So.2d 965, for the proposition that mistrials granted without the defendant's consent and not under the other circumstances set forth in art. 775 (none of which applies to this case) constitute illegal dismissals and trigger the principles of double jeopardy.

Jackson, 947 So.2d at 126.[6]

It is well established that federal habeas review is limited to questions of constitutional dimension. See generally Jernigan v. Collins, 980 F.2d 292, 298 (5th Cir. 1992), cert. denied, 508 U.S. 978 (1993); Castillo v. Johnson,

---

[6]See rec. doc. 1, pp. 23-24 for recitation of the above-cited state law in support of Jackson's federal habeas corpus petition.

141 F.3d 218, 222 and 224 (5th Cir.), cert. denied, 524 U.S. 979 (1998). Absent a due process violation, the fact that petitioner's retrial may have been violative of state law is of no moment for purposes of attaining federal habeas corpus relief.

Further, as the Louisiana Fourth Circuit made clear in addressing the instant issue, Jackson suffered no prejudice as a result of the fact that his first trial ended in a mistrial. While Jackson "theorizes that the [first] jury would have acquitted him . . .", such a theory "is mere speculation".[7] Jackson, 947 So.2d at 126-27.

Accordingly;

## RECOMMENDATION

For the foregoing reasons, it is recommended that the application for federal habeas corpus relief of Riynell Jackson be dismissed with prejudice.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal

---

[7]See discussion supra at pp. 12-15.

conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. §636(b)(1); <u>Douglass v. United Services Auto. Ass'n</u>, 79 F.3d 1415, 1430 (5th Cir. 1996)(<u>en banc</u>).[8]

New Orleans, Louisiana, this  29th   day of   July   , 2010.

*Alma L. Chasez*
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE

---

[8]<u>Douglass</u> referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. §636(b)(1) was amended to extend that period to fourteen days.